FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 07, 2022

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ROBBIE G.,[1] | No. 4:20-cv-05230-MKD |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY, | ECF Nos. 18, 22 |
| Defendant. | |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 18, 22. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court grants Plaintiff's motion, ECF No. 18, and denies Defendant's motion, ECF No. 22.

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

ORDER - 1

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. §§

ORDER - 2

404.1502(a), 416.920(a).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

### FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's

ORDER - 3

work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC),

ORDER - 4

defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that 1) the claimant is capable of performing other work; and 2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On June 29, 2018, Plaintiff applied for Title II disability insurance benefits alleging a disability onset date of March 18, 2017.[2]  Tr. 17, 97, 214-15.  The application was denied initially and on reconsideration.  Tr. 115-21, 123-29. Plaintiff appeared before an administrative law judge (ALJ) on June 18, 2020.  Tr. 34-59.  On July 9, 2020, the ALJ denied Plaintiff's claim.  Tr. 14-31.

---

[2] Plaintiff previously applied for Title II and Title XVI benefits on October 2, 2014; the application was denied initially and on reconsideration and resulted in a March 17, 2017 unfavorable decision from an ALJ.  Tr. 60-76.  On March 28, 2018, the Appeals Council declined to review the decision, Tr. 77-82, and it became final.  *Res judicata* applies through March 17, 2017, with a rebuttable presumption of nondisability after that date.  Tr. 17, *see Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1998); Acquiescence Ruling (AR) 97-4(9), available at 1997 WL 742758 at *3.

ORDER - 6

As a preliminary matter, the ALJ found Plaintiff rebutted the presumption of continuing disability by showing changed circumstances affecting the issue of disability since the prior ALJ decision.  Tr. 20.  At step one of the sequential evaluation process, the ALJ found Plaintiff, who met the insured status requirements through December 31, 2019, had not engaged in substantial gainful activity from the alleged onset date, March 18, 2017, through his date last insured.  Tr. 20.  At step two, the ALJ found that through his date last insured Plaintiff had the following severe impairments: seizure disorder/epilepsy and bilateral hearing loss.  Tr. 20.

At step three, the ALJ found that through the date last insured Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment.  Tr. 22.  The ALJ then concluded that, though the date last insured, Plaintiff had the RFC to perform medium work with the following limitations:

> [Plaintiff] can occasionally climb flight of stairs [sic], and can never climb ladders, ropes, or scaffolds.  [Plaintiff's] position should not require fine hearing capabilities, such as the requirement to hear whisper-level speech.  [Plaintiff] must avoid excessive noise in excess of regular traffic noise.  [Plaintiff] must avoid hazards such as dangerous, moving machinery and unprotected heights.  [Plaintiff] must not drive commercially.  [Plaintiff] can perform simple, routine, unskilled tasks.

Tr. 23.

ORDER - 7

At step four, the ALJ found through the date last insured Plaintiff was unable to perform any past relevant work. Tr. 26. At step five, the ALJ found that through the date last insured, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as laundry worker, kitchen helper, and floor waxer. Tr. 27. Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date of March 18, 2017, through December 31, 2019, the date last insured. Tr. 27.

On September 21, 2020, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated the medical opinion evidence;

2. Whether the ALJ conducted a proper step-three analysis;

3. Whether the ALJ properly evaluated Plaintiff's symptom claims;

4. Whether the ALJ conducted a proper step-five analysis.

ORDER - 8

ECF No. 18 at 6.

## DISCUSSION

### A. Medical Opinion Evidence

Plaintiff contends the ALJ erred in his consideration of the opinion of treating neurologist, Paulo Cancado, M.D.  ECF No. 18 at 8-13.

As an initial matter, for claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence.  *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.  The new regulations provide that the ALJ will no longer "give any specific evidentiary weight…to any medical opinion(s)…" *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. § 404.1520c(a).  Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. § 404.1520c(a) and (b).  The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding"

ORDER - 9

(including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements").  20 C.F.R. § 404.1520c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered.  20 C.F.R. § 404.1520c(b)(2).  Supportability and consistency are explained in the regulations:

> (1) *Supportability.* The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) *Consistency.* The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2).  The ALJ may, but is not required to, explain how the other factors were considered.  20 C.F.R. § 404.1520c(b)(2).  However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered.  20 C.F.R. § 404.1520c(b)(3).

ORDER - 10

1      The parties disagree over whether Ninth Circuit case law continues to be

2  controlling in light of the amended regulations, specifically whether the "clear and

3  convincing" and "specific and legitimate" standards still apply.  "It remains to be

4  seen whether the new regulations will meaningfully change how the Ninth Circuit

5  determines the adequacy of [an] ALJ's reasoning and whether the Ninth Circuit

6  will continue to require that an ALJ provide 'clear and convincing' or 'specific and

7  legitimate reasons' in the analysis of medical opinions, or some variation of those

8  standards." *Gary T. v. Saul*, No. EDCV 19-1066-KS, 2020 WL 3510871, at *3

9  (C.D. Cal. June 29, 2020) (citing *Patricia F. v. Saul*, No. C19-5590-MAT, 2020

10  WL 1812233, at *3 (W.D. Wash. Apr. 9, 2020)).  "Nevertheless, the Court is

11  mindful that it must defer to the new regulations, even where they conflict with

12  prior judicial precedent, unless the prior judicial construction 'follows from the

13  unambiguous terms of the statute and thus leaves no room for agency discretion.'"

14  *Gary T.,* 2020 WL 3510871, at *3 (citing *Nat'l Cable & Telecomms. Ass'n v.*

15  *Brand X Internet Services*, 545 U.S. 967, 981-82 (2005); *Schisler v. Sullivan*, 3

16  F.3d 563, 567-58 (2d Cir. 1993) ("New regulations at variance with prior judicial

17  precedents are upheld unless 'they exceeded the Secretary's authority [or] are

18  arbitrary and capricious.'").

19      There is not a consensus among the district courts as to whether the "clear

20  and convincing" and "specific and legitimate" standards continue to apply.  *See,*

ORDER - 11

*e.g.*, *Kathleen G. v. Comm'r of Soc. Sec.*, 2020 WL 6581012, at *3 (W.D. Wash. Nov. 10, 2020) (applying the specific and legitimate standard under the new regulations); *Timothy Mitchell B., v. Kijakazi*, 2021 WL 3568209, at *5 (C.D. Cal. Aug. 11, 2021) (stating the court defers to the new regulations); *Agans v. Saul*, 2021 WL 1388610, at *7 (E.D. Cal. Apr. 13, 2021) (concluding that the new regulations displace the treating physician rule and the new regulations control); *Madison L. v. Kijakazi*, No. 20-CV-06417-TSH, 2021 WL 3885949, at *4-6 (N.D. Cal. Aug. 31, 2021) (applying only the new regulations and not the specific and legitimate nor clear and convincing standard).  This Court has held that an ALJ did not err in applying the new regulations over Ninth Circuit precedent, because the result did not contravene the Administrative Procedure Act's requirement that decisions include a statement of "findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record."  *See, e.g., Jeremiah F. v. Kijakazi*, No. 2:20-CV-00367-SAB, 2021 WL 4071863, at *5 (E.D. Wash. Sept. 7, 2021).  Nevertheless, it is not clear that the Court's analysis in this matter would differ in any significant respect under the specific and legitimate standard set forth in *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

In August 2019 and April 2020, plaintiff's neurologist, Dr. Cancado, completed medical report forms and rendered an opinion on Plaintiff's functioning.

ORDER - 12

Tr. 364-67, 368-70.  In an August 2019 disability status update form for Unum, Dr. Cancado reported the primary diagnosis that impacts Plaintiff's functional capacity is a seizure disorder, and that his symptoms include seizure spells.  Tr. 365.  Dr. Cancado opined Plaintiff "has a seizure disorder which cannot be appropriately controlled.  Therefore, the patient is unable to be employed."  Tr. 366.

In April 2020, Dr. Cancado reported he first saw Plaintiff in October 2018, his last appointment was April 2020, and that his diagnosis is epilepsy.  Tr. 368. He reported Plaintiff's symptoms include "spells including alteration of attention, concentration, memory, confusion lasting up to a few minutes," and that relevant clinical findings, include "staring off spacing off spells."  *Id.*  He noted Plaintiff takes antiseizure medication and indicated that work on a regular and continuous basis would cause Plaintiff's condition to deteriorate; he explained "It might. [Plaintiff] is unable to work due to frequent episodes."  *Id*.  He further opined if Plaintiff attempted to work a 40-hour week it was more probable than not that he would miss four workdays or more due to his impairment, and that "[Plaintiff] has seizure spells at least 1-2 [times] a week which would preclude employment."  Tr. 369.  He indicated Plaintiff would likely be off-task and unproductive over 30 percent of the time during a 40-hour workweek, that these limitations have existed since April 2014.  Tr. 370.  He opined Plaintiff's epilepsy is "not well controlled enough for him to be employed," and that seizures "affect his attention,

concentration, [and] memory, which is detrimental to his safety and the safety of others," and that "during the spells he loses control of himself." *Id.* The ALJ found Dr. Cancado's opinions were not persuasive.

The ALJ discusses Dr. Cancado's 2019 and 2020 opinions together. Tr. 24-25. First, the ALJ found that Dr. Cancado's opinion is not a medical opinion but a conclusion on a legal issue reserved for the Commissioner. Tr. 25. In support of this conclusion, the ALJ cites to the regulations for evaluating opinion evidence for claims filed prior to March 2017. Tr. 25, (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)). However, Plaintiff's claim was filed in June 2018 and is subject to the new medical rules, as explained *supra*; Defendant points out that under the new regulations, statements from a medical source that a claimant is not able to work "are neither valuable nor persuasive" to adjudicators, as they pertain to an issue reserved to the Commissioner and argues that the ALJ reasonably found Dr. Cancado's statement Plaintiff could not work unpersuasive under the new regulations. ECF No. 22 at 15, (citing 20 C.F.R. § 404.1520b(c)(3)(i)). The new regulations dictate that statements such as Plaintiff is not able to work are statements are "inherently neither valuable nor persuasive" and the ALJ "will not provide any analysis about how we considered such evidence in our determination or decision, even under §404.1520c." *See* 20 C.F.R. § 404.1520b(c). However, as Plaintiff points out, Dr. Cancado provided numerous specific findings, not just

1    "sweeping conclusions the claimant is unable to work," *see* Tr. 25, and the ALJ is

2    required to articulate his consideration of Dr. Cancado's medical opinions under

3    the new regulations.  ECF No. 18 at 10, *see* 20 C.F.R. § 404.1520c.  Any error by

4    the ALJ in applying the old rules is harmless, however, as the ALJ went on to

5    discuss Dr. Cancado's opinions under the factors of supportability and consistency

6    as required by the new regulations.

7          Next, the ALJ found Dr. Cancado's opinion was not supported because "his

8    opinion does not indicate what functions are limited."  Supportability is one of the

9    most important factors an ALJ must consider when determining how persuasive a

10   medical opinion is.  20 C.F.R. § 404.1520c(b)(2).  The more relevant objective

11   evidence and supporting explanations that support a medical opinion, the more

12   persuasive the medical opinion is.  20 C.F.R. § 404.1520c(c)(1)-(2).  Here, Dr.

13   Cancado, a specialist in neurology, noted his diagnosis of seizure disorder,

14   explaining Plaintiff suffers seizures/spells at least one to two times a week that

15   cause impaired attention, concentration, and memory; Dr. Cancado also noted that

16   Plaintiff "loses control of himself" during his seizures, which he opined is a safety

17   issue for Plaintiff and others.  Tr. 369-70.  Dr. Cancado opined seizures/spells and

18   resultant limitations would result in Plaintiff missing work more than four times a

19   month and/or being unproductive and off task 30 percent of the workweek.  Tr.

20   369-70.  As Plaintiff points out, Dr. Cancado provided numerous specific findings,

ORDER - 15

ECF No. 18 at 10, as Dr. Cancado reported Plaintiff's diagnosis and explained that the frequent seizures/spells cause limitations in Plaintiff's ability to function including in his ability to pay attention, concentrate, and remember; Dr. Cancado further explained how often this occurred and provided his opinion as to how it would affect Plaintiff in terms of missed days and percent of time off task in a given workweek and/or month.  As such, the ALJ's conclusion that Dr. Cancado's did not indicate what functions are limited is not supported by substantial evidence.

Next, the ALJ found "moreover, [Plaintiff's] description of seizures, that they occur for about 20 minutes and he is tired for a similar length of time after seizure[s], are not supportive of this [Dr. Cancado's] conclusion." Tr. 25.  Plaintiff argues the ALJ failed to point to any inconsistencies here between Dr. Cancado's opinion and Plaintiff's claims, as Plaintiff has consistently reported seizure spells lasting from a few minutes to 15 minutes, characterized by dizziness, confusion, lack of awareness and inability to respond, followed by a period of exhaustion. ECF No. 18 at 11, *see* Tr. 41-42.  Plaintiff's testimony is also consistent with treatment notes from October 2018, for example, showing Plaintiff was still having petit mal seizures a few times a month with alteration of attention, concentration, and memory, which "may last 15-20 minutes. Thereafter, the patient feels very tired." Tr. 348-49.  In treatment notes from April 2019, Dr. Cancado noted Plaintiff's report of "episodes of staring off behavior with lipsmacking which takes

1    20 minutes to recover." Tr. 350.  Plaintiff's reports are also consistent with the

2    observations of witnesses, including family members and friends, who report

3    similar, frequent seizure/spells.  *See* Tr. 289-93.  While the ALJ noted he was not

4    required to articulate how he considered evidence from nonmedical sources under

5    the new rules, *see* C.F.R. § 404.1520c(d), these statements appear consistent with

6    Plaintiff's allegations of frequent spells where he suffers loss of ability to function,

7    including inability to speak or respond.  Without some articulation of the

8    inconsistencies between the Plaintiff's claims and the medical source opinion, the

9    Court is unable to meaningfully review this proffered basis for evaluating the

10   medical opinion.  The ALJ's finding that Dr. Cancado's opinion is not supported

11   by or consistent with descriptions of Plaintiff's seizures is not supported by

12   substantial evidence.

13        The ALJ also concluded that Dr. Cancado's opinion was "equivocal, rather

14   than concrete." Tr. 25.  "[T]he ALJ is the final arbiter with respect to resolving

15   ambiguities in the medical evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041

16   (9th Cir. 2008).  Dr. Cancado indicated that work on a regular and continuous basis

17   "might" cause Plaintiff's condition to deteriorate.  Tr. 368.  This is not a concrete

18   limitation and the ALJ was within his discretion to limit the provider's opinion to

19   concrete not equivocal limitations.  As Plaintiff points out, however, Dr. Cancado

20   also offers several discrete limitations, including that Plaintiff's impairments

would cause him to miss four or more days a month and that he would be off task

30 percent of a 40 hour workweek due to seizures/spells that occur at least one to

two times a week and impair his attention, concentration, and memory.  ECF No.

18 at 10, *see* Tr. 369.  While the ALJ was within his discretion to reject the

equivocal opinion that work might cause Plaintiff's condition to deteriorate, Dr.

Cancado also provided a number of discrete and concrete limitations, and the

ALJ's conclusion that Dr. Cancado's opinion is overall equivocal is not supported

by substantial evidence.

The ALJ also concluded Dr. Cancado's opinion was inconsistent with

"treatment notes, which consistently show Plaintiff's condition improving with

treatment and envisions only quarterly check-ins," and "his course of treatment."

Tr. 25.  Consistency is one of the most important factors an ALJ must consider

when determining how persuasive a medical opinion is.  20 C.F.R. §

404.1520c(b)(2).  The more consistent an opinion is with the evidence from other

sources, the more persuasive the opinion is.  20 C.F.R. § 404.1520c(c)(2).  While

elsewhere in the decision the ALJ finds Plaintiff's "partial seizure activity is

significantly reduced" and "treatment with Keppra has been effective," Tr. 24,

treatment records show more mixed findings.  For example, while in March 2017

his neurologist noted he "has not had any recurrent seizure activity on the current

dose of Keppra," by June 2017 records show he was having "an occasional episode

ORDER - 18

of partial seizure," and he was put on a supplemental medication, Lamictal, to "decrease the frequency of seizures" as well as stabilize his mood, with instruction to follow up in one month.  Tr. 323-24.  In July 2017, however, Lamictal was discontinued due to an allergic reaction.  Tr. 318.  His neurologist noted his diagnosis of "poorly controlled seizure disorder," and indicated that although Keppra had "significantly reduced the frequency and severity of his seizures" he still experienced approximately two partial seizures a month; follow up in one month was recommended.  Tr. 318.  In November 2017 his neurologist noted he was doing well on the Keppra dose, although he had an "episode" where he was confused for a brief time, and he also noted "he has returned to baseline since discontinuing alcohol."  Tr. 310.  At a mental health evaluation in 2018, however, Plaintiff reported three to four partial seizures a month, and the examiner noted Plaintiff's report of increasing health difficulties including frequency of seizures. Tr. 336.

In October 2018, Plaintiff began treatment with Dr. Cancado, who noted "he continues to have 'petit mal' seizures which occur a few times a month."  Tr. 348. He recommended follow up in two months.  Tr. 349.  In April 2019, Dr. Cancado noted Plaintiff's report of episodes, "every two weeks or so" with "episodes of staring off behavior with lipsmacking which takes approximately 20 minutes to recover."  Tr. 350.  He increased Keppra dosage and again recommended follow

ORDER - 19

up in two to three months.  Tr. 351.  In August 2019, Dr. Cancado noted his

seizures are "fairly well controlled," although he did not specify a number of

episodes a month; he recommended follow up in six months.  Tr. 353-54.

However, later the same month Dr. Cancado opined Plaintiff could not sustain

employment because his seizures "cannot appropriately be controlled."  Tr. 366.

Dr. Cancado also reported Plaintiff's spells were occurring at least 1-2 times a

week as of April 2020.  Tr. 370.  Plaintiff testified in June 2020 that his Keppra

dose had recently been increased to 1000 mg two times a day due to continued

unpredictable seizures/spells at least three to four times a month.  Tr. 41-42, 370.

Plaintiff remains on long term disability from past employment as an

electrician due to a seizure disorder; records indicate he had no further grand mal

seizure activity during the period at issue, but also show that despite treatment,

including increased medication, he still experiences variable and unpredictable

petit mal seizures/spells.  *See* Tr. 310, 315, 318.  The ALJ's conclusion that records

consistently show improvement with treatment is not supported by substantial

evidence.

Further, the ALJ did not explain his conclusion that treatment records

"[envision] only quarterly check-ins" and this is not supported by medical records.

Tr. 25.  The claimant's relationship with the provider is a relevant factor in

determining the persuasiveness of an opinion.  20 C.F.R. § 404.1520c(c)(3)(i)-(v).

The length of the relationship, frequency of examinations, and extent of the treatment relationship are all relevant considerations. *Id.* Further, "an ALJ may discount a physician's opinion that is inconsistent with the conservative nature of the claimant's treatment." *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). However, "[a]ny evaluation of the aggressiveness of a treatment regimen must take into account the condition being treated." *Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017). Here, however, the ALJ offers no reference to treatment records or explanation to support his conclusion that quarterly neurology appointments were envisioned, or that Dr. Cancado's opinion is inconsistent with Plaintiff's course of treatment. As noted *supra*, records show Plaintiff was regularly instructed to return for follow up in one to three months during the period at issue (although review of the limited treatment record also shows he returned less frequently than recommended). Plaintiff argues quarterly neurology appointments in fact support Plaintiff's allegations, but he also does not supply any evidence or cite any authority to support his assertion. *See* ECF No. 18 at 12-13. Regardless, the ALJ did not explain why quarterly check-ins or Plaintiff's course of treatment is inconsistent with Dr. Cancado's opinion. The ALJ's conclusory statements fail to meet the burden of "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Trevizo v. Berryhill*, 871 F.3d 644, 675 (9th Cir. 2017) (internal

ORDER - 21

citations omitted).  The ALJ's conclusions regarding frequency of appointments or course of treatment are not supported by substantial evidence.

Finally, the ALJ found Dr. Cancado's opinion inconsistent with Plaintiff's "level of completed daily activities."  Tr. 25.  The ALJ summarizes Plaintiff's activities elsewhere in the decision, noting Plaintiff lived alone some of the time during the period at issue, that he was independent in activities of self-care, took care of a dog, prepared meals, completed household chores, drove, shopped, played golf, and was "independent with financial matters."  Tr. 24.  However, as Plaintiff points out, the ALJ does not provide any analysis of how such activities are inconsistent with Plaintiff's allegations, noting that Plaintiff only experiences symptoms during and after his seizures/spells, and that Plaintiff alleges his activities are limited during and following seizures.  ECF No. 18 at 12-13.  The ALJ did not explain how performing these activities of daily living activities when he is not having or recovering from seizures/spells contradicts the medical opinion evidence.  The ALJ also did not acknowledge Plaintiff's reported modifications in performance of daily activities such as limiting driving, not engaging in lifting "much at all," trying to stay off his feet, and just "sit[ting] around" when he wakes up feeling like he has had a seizure/spell in his sleep or feels "out of balance" due to after effects of seizures; he testified he no longer engages in activities he enjoys, such as fishing, and "just stay[s] home."  *See* Tr. 48-50.  As such, the ALJ's

ORDER - 22

finding that Plaintiff's level of completed daily activity is inconsistent with Dr. Cancado's opinion is not supported by substantial evidence.

The ALJ's reasons for rejecting Dr. Cancado's opinion are not supported by substantial evidence.  On remand, the ALJ is instructed to reconsider Dr. Cancado's opinion with the assistance of medical expert testimony, preferably a neurologist, and to incorporate the limitations into the RFC or give reasons supported by substantial evidence to reject the opinion.

The ALJ found the August and December 2018 opinions of the state agency consultants, Dr. Nisbet and Dr. Fitterer, more persuasive than the opinion of Dr. Cancado.  Tr. 25, 89-91, 105-07.  However, the ALJ did not evaluate the persuasiveness of the prior administrative medical findings using the factors of consistency and supportability as required under the new regulations.  *See* 20 C.F.R. § 404.1520c(a) and (b).

As the case is being remanded for reconsideration of Dr. Cancado's opinion with the assistance of medical expert testimony, the ALJ is further instructed to reconsider all opinion evidence using the factors required under the regulations.

**B. Step Three**

Plaintiff contends the ALJ erred by failing to conduct an adequate analysis, failing to consider Listing 11.02B, and failing to find Plaintiff disabled.  ECF No. 18 at 13-15.  At step three, the ALJ must determine if a claimant's impairments

1  meet or equal a listed impairment.  20 C.F.R. § 404.1520(a)(4)(iii).  The Listing of

2  Impairments "describes for each of the major body systems impairments [which

3  are considered] severe enough to prevent an individual from doing any gainful

4  activity, regardless of his or her age, education or work experience."  20 C.F.R. §

5  404.1525.  "Listed impairments are purposefully set at a high level of severity

6  because 'the listings were designed to operate as a presumption of disability that

7  makes further inquiry unnecessary.'"  *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th

8  Cir. 2013) (citing *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990)).  "Listed

9  impairments set such strict standards because they automatically end the five-step

10  inquiry, before residual functional capacity is even considered."  *Kennedy,* 738

11  F.3d at 1176.  If a claimant meets the listed criteria for disability, she will be found

12  to be disabled.  20 C.F.R. § 404.1520(a)(4)(iii).

13      "To *meet* a listed impairment, a claimant must establish that he or she meets

14  each characteristic of a listed impairment relevant to his or her claim."  *Tackett,*

15  180 F.3d at 1099 (emphasis in original); 20 C.F.R. § 404.1525(d).  "To *equal* a

16  listed impairment, a claimant must establish symptoms, signs and laboratory

17  findings 'at least equal in severity and duration' to the characteristics of a relevant

18  listed impairment . . ."  *Tackett*, 180 F.3d at 1099 (emphasis in original) (quoting

19  20 C.F.R. § 404.1526(a)).  "If a claimant suffers from multiple impairments and

20  none of them individually meets or equals a listed impairment, the collective

ORDER - 24

symptoms, signs and laboratory findings of all of the claimant's impairments will be evaluated to determine whether they meet or equal the characteristics of any relevant listed impairment." *Id*.  However, "[m]edical equivalence must be based on medical findings," and "[a] generalized assertion of functional problems is not enough to establish disability at step three." *Id*. at 1100 (quoting 20 C.F.R. § 404.1526(a)).

The claimant bears the burden of establishing his impairment (or combination of impairments) meets or equals the criteria of a listed impairment. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).  "An adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3."  Social Security Ruling (SSR) 17-2P, 2017 WL 3928306, at *4 (effective March 27, 2017).

Here, the ALJ found that through the date last insured Plaintiff's impairments and combinations of impairments did not meet or equal any listings. Tr. 22.  As the case is being remanded for the ALJ to reconsider the medical opinion evidence with the benefit of medical expert testimony, the ALJ is also instructed to perform the five-step analysis anew including reconsidering whether Plaintiff's impairments met or equaled any listing during the period at issue.  The

ALJ is further instructed to call a medical expert at the hearing to assist with determining if Plaintiff's impairments met or equaled a listing, and if not, to give an opinion on Plaintiff's RFC during the relevant period.

### C. Plaintiff' Symptom Claims

Plaintiff contends the ALJ improperly rejected Plaintiff's symptom complaints. ECF No. 18 at 15-20. An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16–3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what

symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§ 404.1529I, 416.929I. The ALJ is instructed to "consider all of the evidence in an individual's record," to "determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

ORDER - 27

1    The ALJ found that Plaintiff's medically determinable impairments could

2   reasonably be expected to cause the alleged symptoms, but that Plaintiff's

3   statements concerning the intensity, persistence, and limiting effects of his

4   symptoms were not entirely consistent with the evidence.  Tr. 24.

5    The ALJ's evaluation of Plaintiff's symptom claims, and the resulting

6   limitations relies almost entirely on the ALJ's assessment of the medical evidence.

7   Having determined a remand is necessary to readdress Dr. Cancado's medical

8   source opinion, any reevaluation must necessarily entail a reassessment of

9   Plaintiff's subjective symptom claims.  Thus, the Court need not reach this issue

10   and on remand the ALJ must also carefully reevaluate Plaintiff's symptom claims

11   in the context of the entire record.  *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th

12   Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we

13   decline to reach [plaintiff's] alternative ground for remand.").

14   **D. Step Five**

15    Plaintiff contends the ALJ erred by failing to conduct an adequate analysis at

16   step five.  ECF No. 18 at 20.  "[I]f a claimant establishes an inability to continue

17   [his] past work, the burden shifts to the Commissioner in step five to show that the

18   claimant can perform other substantial gainful work."  *Burch*, 400 F.3d at 679

19   (*citing Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)).  At step five, "the

20   ALJ ... examines whether the claimant has the [RFC] ... to perform any other

ORDER - 28

1  substantial gainful activity in the national economy." *Id*. "If the claimant is able to

2  do other work, then the Commissioner must establish that there are a significant

3  number of jobs in the national economy that claimant can do." *Tackett*, 180 F.3d

4  at 1099. "There are two ways for the Commissioner to meet the burden of

5  showing that there is other work in 'significant numbers' in the national economy

6  that claimant can do: (1) by the testimony of a [VE], or (2) by reference to the

7  Medical-Vocational Guidelines...." *Id*. "If the Commissioner meets this burden,

8  the claimant is not disabled and therefore not entitled to ... benefits." *Id*. (citation

9  omitted). "If the Commissioner cannot meet this burden, then the claimant is

10  disabled and therefore entitled to ... benefits." *Id*. (citation omitted).

11      As the case is being remanded for the ALJ to reconsider the medical opinion

12  evidence and perform the five-step analysis anew, the ALJ is also instructed to

13  reconsider the step-five analysis.

14  **E. Remedy**

15      Plaintiff urges this Court to remand for an immediate award of benefits.

16  ECF No. 18 at 20-21. "The decision whether to remand a case for additional

17  evidence, or simply to award benefits is within the discretion of the court."

18  *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*,

19  761 F.2d 530 (9th Cir. 1985)). When the Court reverses an ALJ's decision for

20  error, the Court "ordinarily must remand to the agency for further proceedings."

ORDER - 29

1  *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379

2  F.3d 587, 595 (9th Cir. 2004) ("the proper course, except in rare circumstances, is

3  to remand to the agency for additional investigation or explanation"); *Treichler v.*

4  *Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).  However, in a

5  number of Social Security cases, the Ninth Circuit has "stated or implied that it

6  would be an abuse of discretion for a district court not to remand for an award of

7  benefits" when three conditions are met.  *Garrison*, 759 F.3d at 1020 (citations

8  omitted).  Under the credit-as-true rule, where (1) the record has been fully

9  developed and further administrative proceedings would serve no useful purpose;

10  (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence,

11  whether claimant testimony or medical opinion; and (3) if the improperly

12  discredited evidence were credited as true, the ALJ would be required to find the

13  claimant disabled on remand, the Court will remand for an award of benefits.

14  *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017).  Even where the three

15  prongs have been satisfied, the Court will not remand for immediate payment of

16  benefits if "the record as a whole creates serious doubt that a claimant is, in fact,

17  disabled."  *Garrison*, 759 F.3d at 1021.

18      Here, the Court finds further proceedings are necessary to resolve conflicts

19  in the record, including conflicting medical opinions, as well as to further develop

20

ORDER - 30

the record by taking testimony from a medical expert.  As such, the case is remanded for further proceedings consistent with this Order.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is not supported by substantial evidence and not free of harmful legal error.  Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 18**, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 22**, is **DENIED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED March 7, 2022.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 31